UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARCUS WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-02205-RLY-DLP |
| ) | |
| NANCY BERRYHILL, Deputy ) | |
| Commissioner for Operations, Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Marcus White requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Social Security Disability Insurance ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 301, 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's decision should be **REVERSED** and **REMANDED**.

### I. PROCEDURAL BACKGROUND

On October 17, 2013, Marcus White filed for disability insurance benefits under Title II of the Social Security Act, alleging that his disability began on March 19, 2012. The claim was denied initially and upon reconsideration. White then filed a written request for a hearing on September 8, 2014, which was granted.

On March 16, 2016, Administrative Law Judge Paul Greenberg conducted the hearing. White, White's sister, and a vocational expert testified at the hearing.

1

Subsequent to the hearing, the ALJ reviewed additional medical records.[1] On May 27, 2016, the ALJ issued his unfavorable decision finding that White was not disabled as defined in the Act. On April 27, 2017, the Appeals Council denied White's request for review of this decision, making the ALJ's decision final. White now seeks judicial review of the Commissioner's decision. *See* 42 U.S.C. § 1383(c)(3).

## II. STANDARD OF REVIEW

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations

---

[1] Subsequent to the hearing, the ALJ secured additional medical records in this case. In a letter dated, April 1, 2016, the ALJ proffered the medical records to White, and gave him ten days to respond. As of the date of the decision, May 27, 2016, White had not offered a response. Thus, the ALJ accepted the medical records as evidence.

>as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [him] unable to perform [his] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant—in light of his age, education, job experience and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether White is disabled, but,

rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial-evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues, *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also, *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).

The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d at 872.

### III.  DISCUSSION

#### A. Factual Background

White was born on August 14, 1970, and was 45 years old at the time of the hearing in March 2016. [Dkt. 13-2 at 48 (R. 47).] He completed high school through the 9th grade and never received a GED (General Equivalency Diploma). [Dkt. 13-2 at 51 (R. 50).] White does not have a driver's license, and smokes about half a pack of cigarettes a day. [Dkt. 13-2 p. 50 (R. 49).] White previously worked as a service and installation technician in the telecommunications and alarm industry. [Dkt. 13-2 at 55-58 (R. 54-57).] It was during direct installation in a confined attic space in 2012 that White injured his lower spine. [Dkt. 13-2 at 59-60 (R. 58-59).]

#### B. Medical History

Following the injury in the attic, White treated with IU Health Occupational services, where he was referred for an MRI that ultimately showed the existence of a right lumbar foraminal disc extrusion, resulting in impingement at L-3 (the third vertebra of the lumbar spine in the lower back) [Dkt. 13-7 at 5-6 (R. 245-46).] For his continued back pain, White was referred to Dr. Bianca Ainhorn at OrthoIndy on May 8, 2012, who observed that White had an abnormal gait, visible muscle tightness in the right paraspinal muscles, tenderness to palpation at L3-4, and a positive right straight-leg raise test which elicited groin pain. [Dkt. 13-7 at 43-44 (R. 283-284).] Dr. Ainhorn referred White for an epidural steroid injection and physical therapy, which were moderately helpful for his back pain, but did not address his consistent leg pain. [Dkt. 13-7 at 41-42 (R. 281-282).] Dr. Ainhorn referred White to

5

Dr. John Dietz with OrthoIndy for a spinal surgery consultation, wherein it was recommended that White undergo a microdiscectomy surgery.[2] [Dkt. 13-7 at 35-53 (R. 275-293).] Dr. Dietz performed the surgery on September 14, 2012. [*Id.*]

It appears that an unfortunate accident involving a sneeze led to a recurrence of White's pain in December 2012, with an MRI showing a new herniation at the same L3-4 location. [Dkt. 13-7 at 27, 29 (R. 267, 269).] On January 16, 2013, Dr. Dietz performed a revision microdiscectomy at L3-4. [Dkt. 13-7 at 24 (R. 264).] During follow-up with Dr. Dietz in March 2013, White's gait was stooped and shuffling and he complained of pain during range of motion testing, but he exhibited normal strength and tone, along with intact neurological findings. [Dkt. 13-7 at 21 (R. 261).]

Dr. Dietz referred White for a functional capacity evaluation ("FCE") with ATI Physical Therapy. [Dkt. 13-9 at 40-41 (R. 389-390).] One month later, White underwent a six-hour FCE, wherein Joanne McDowell, L.P.T., found that White's performance diminished as his medication wore off and testing progressed. [Dkt. 13-9 at 42-47 (R. 391-96).] McDowell found White capable of performing a range of medium exertion work activities after concluding that his performance was reliable with maximal effort given during testing. [Dkt. 13-9 at 42 (R. 391).] Dr. Dietz released White after determining that he had reached maximal medical improvement. [Dkt. 13-7 at 16 (R. 256).] Dr. Dietz placed White on permanent restrictions consistent with those assigned by McDowell in the FCE. [*Id.*]

---

[2] A microdiscectomy is a procedure used to remove a ruptured or herniated portion of a disc in the spine.

In September 2013, Dr. Dietz noted that a follow-up MRI revealed that postoperative changes had occurred along White's lower spine, including epidural fibrosis along the right L3 nerve root, but no evidence of new root impingement or nerve compression and, as a result, Dr. Dietz did not recommend further surgery. [Dkt. 13-11 at 108-09 (R. 563-64).] By November 2013 when White was discharged from ATI Physical Therapy, White's functioning level was measured as light, with a goal of return to heavy exertion. [Dkt. 13-10 at 28 (R. 427).]

Following White's application for disability insurance benefits in October 2013, Dr. Mauro Agnelneri performed a consultative examination in November 2013, wherein it was noted that even though White walked without an assistive device, his gait was antalgic, favoring the left leg. [Dkt. 13-10 at 54-57 (R. 453-56).] Dr. Agnelneri also observed that White had reduced lumbar range of motion, but negative straight leg raise tests. [*Id.*] Dr. Agnelneri diagnosed White with herniated discs with continued pain following surgery and some left leg weakness. [*Id.*]

In December 2013, Dr. Michael Brill, a state agency physician, reviewed White's medical records and assessed him with light[3] residual functional capacity[4] ("RFC"), for lifting twenty pounds occasionally and ten pounds frequently, standing

---

[3] The regulations explain that light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994). A job in this category requires much walking or standing; if sitting, it involves some pushing and pulling of the arms or legs. 20 C.F.R. § 404.1567(b). *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

[4] Residual functional capacity is a claimant's ability to do work on a regular and continuing basis despite his impairment-related limitations. 20 C.F.R. § 1545.

7

and walking for about six hours in an eight-hour day, sitting for about six hours in an eight hour day, and unlimited pushing and pulling. [Dkt. 13-3 at 2-9 (R. 74-81).]

In August 2014, Dr. J. Sands, a state agency physician, reviewed White's medical records and assessed him with light residual functional capacity, with the same restrictions as assigned by Dr. Brill. [Dkt. 13-3 at 10-18 (R. 82-90).] Dr. Sands noted that the objective findings from the September 2013 MRI scan supported his assessment of White's functional capacity limitations. [*Id.*]

In June 2013, White began treatment with Dr. Michael LaRosa, a family doctor, for chronic back pain. [Dkt. 13-11 at 20 (R. 475).] White attended ten (10) visits with Dr. LaRosa between June 2013 and January 2016, wherein White had recurring symptoms of pain and clinical signs of an antalgic gait, diffuse lumbar tenderness, and trace right quadriceps weakness. [Dkt. 13-11 at 31, 35, 54, 92 (R. 486, 490, 509, 547).] White's other doctors had noted that this residual pain was to be expected, but that additional surgery was not recommended because of the minimal likelihood of relieving White's pain. [Dkt. 13-11 at 93, 109 (R. 548, 564).]

After approximately 3 years of treatment, in February 2016, Dr. LaRosa completed a Physical Medical Source Statement form for White, wherein it was noted that White maintained diagnoses of spondylosis, degenerative disc disease, and sciatica. [Dkt. 13-11 at 97-99 (R. 552-54).] White's symptoms were listed as ongoing back pain, right leg numbness with severe sciatic pain when standing, walking, and sitting, [*Id.*] Dr. LaRosa assessed White with a residual functional capacity of standing and walking for less than two hours in an eight-hour day;

sitting for less than two hours in an eight-hour day; and taking unscheduled thirty-minute breaks every one-to-two hours due to muscle weakness, chronic fatigue, pain, numbness, and adverse effects of medication. [*Id.*] Dr. LaRosa further noted that White would be absent from work more than four days per month; would be off task 25% of the time or more; would have good days and bad days; and that these functional limitations applied from the date of White's disability in March 2012 through the present of February 2016. [*Id.*]

### C. ALJ Decision

In determining whether White qualified for disability benefits under the Act, the ALJ went through the five-step analysis required by 20 C.F.R. § 404.1520(a). The ALJ first determined that White met the insured status requirements of the Act through December 31, 2017, even though White had engaged in substantial gainful activity from March 19, 2012 through April 23, 2012 and again from November 2015 through February 2016, along with periods of employment in 2014 and 2015 that did not rise to substantial gainful activity. [Dkt. 13-2 at 21-23 (R. 20-22).]

At step two, the ALJ found White's severe impairments to include "degenerative disc disease of the lumbar spine with recurrent herniated disc, including status post two discectomies (initial surgery in 2012, with revision surgery in 2013)." [Dkt. 13-2 at 23 (R. 22).]

As noted above, the third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of

the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii). At step three, the ALJ found that White did not have an impairment or combination of impairments that meets or medically equals a Listing, specifically considering Listing 1.04 for disorders of the spine. [Dkt. 13-2 at 24-25 (R. at 23-24).]

At the fourth step of the five-step sequential evaluation process, the ALJ evaluated whether White was capable of performing his past relevant work given his residual functional capacity and determined that White is unable to perform any past relevant work as a cable installer, alarm installer-servicer, or warehouse worker, all of which required medium level exertion. [Dkt. 13-2 at 30 (R. at 29).]

Moving to step five, the ALJ determined that despite his impairments, White was not prevented from undertaking work which required light exertion. In weighing the medical evidence, the vocational expert's testimony, White's testimony and work history, and White's sister's testimony, the ALJ assessed that White had the RFC to perform light work, except with the limitations that he could:

- not climb ladders, ropes, or scaffolds;
- frequently balance and stoop;
- occasionally kneel, crouch, crawl, and claim ramps and stairs;

- not operate motorized equipment as part of the job;

- never participate in concentrated exposure to unprotected heights, moving mechanical parts, and vibration; and

- sit for five minutes after standing for 25 minutes or stand for five minutes after sitting for 25 minutes.

[Dkt. 13-2 at 25 (R. at 24).] The ALJ found that – considering White's age, education, work experience, and RFC – he is able to perform other light work jobs that exist in significant numbers in the national economy, including cashier, routing clerk, and furniture rental consultant. [Dkt. 13-2 at 30-1 (R. at 29-30).]

Based on these findings, the ALJ concluded that White is not disabled under the Act. [Dkt. 13-2 at 30-31 (R. at 29-30).]

### D. TREATING PHYSICIAN'S OPINION

White's primary argument on appeal is that the ALJ failed to give appropriate weight to White's treating physician, Dr. Michael LaRosa, who determined that White could only sit, stand, and walk for no more than two hours in an eight hour day (with intermittent breaks). Specifically, White contends that Dr. LaRosa's opinion should have been given controlling weight rather than limited weight, which would have resulted in a finding that White was disabled. In response, the Commissioner argues that the ALJ provided a reasoned basis for giving limited weight to the opinion of Dr. LaRosa, which included noting that Dr. LaRosa's opinion was not well-supported by medical findings and was inconsistent with the other evidence in the record.

11

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. §404.1527(c)(2) (2011); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (recognizing that while a treating physician has been able to observe the claimant over a long period of time, the opinion may be unreliable if the physician is sympathetic with the claimant). The ALJ must give good reasons for not giving the treating physician's opinion controlling weight and "[t]his court upholds all but the most patently erroneous reasons for discounting a treating physician's assessment." 20 C.F.R § 404.1527(c)(2); Social Security Ruling 96-2p; *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011). "Good reasons" include that a treating source's opinion is not well-supported by medical findings, is inconsistent with the opinion of the consulting physician, is based solely on the subjective complaints of the patient, or is internally inconsistent. 20 C.F.R. § 404.1527(c)(2); *Henke v. Astrue,* 498 F. App'x 636, 640 (7th Cir. 2012); *Ketelboeter*, 550 F.3d at 625.

"A claimant is not entitled to disability benefits simply because [his] physician states that he is 'disabled' or unable to work." *Clemons v. Astrue,* No. 1:09-cv-348-SEB-DML, 2010 WL 3168660, at *3 (S.D. Ind. Aug. 10, 2010) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006) (clarifying "treating physician rule" and noting that it can be proper to give opinion of non-examining physician greater weight than that of treating physician).

In deciding the weight to be given to any medical opinion, the ALJ must consider numerous factors: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." 20 C.F.R. § 404.1527. Courts in the Seventh Circuit have criticized decisions in which the presiding ALJ failed to address the checklist of factors set forth in 20 C.F.R. § 404.1527 after finding that a treating source's opinion was not entitled to controlling weight. *See Campbell v. Astrue,* 627 F.3d 299, 309 (7th Cir. 2010) (reversing where the ALJ did not explicitly address the checklist of factors, the proper consideration of which may have caused the ALJ to accord greater weight to the doctor's opinion); *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision for failing to address the "required checklist of factors" and remanding with instructions to afford the plaintiff's treating psychiatrist's opinion controlling weight).

Here, White asserts that the ALJ committed reversible error when he assigned limited weight to the opinion of Dr. LaRosa. The ALJ's decision indicates that he considered medical opinion evidence, but it does not explicitly address the checklist of factors as applied to the medical opinion evidence. Several of the factors support the conclusion that Dr. LaRosa's opinion should be given great weight: Dr. LaRosa treated White for almost three (3) years after the accident occurred; the medical evidence supported his opinion; he treated White on a fairly regular basis; and his findings remained relatively consistent throughout the course of White's

treatment. Proper consideration of these factors may have caused the ALJ to accord greater weight to Dr. LaRosa's opinion.

The ALJ assigned "significant weight" to the functional capacity evaluation performed by Joanne McDowell, LPT in February 2013, because her opinion that White had medium exertional function was based on an assessment of a variety of functional limitations using standardized metrics over a six-hour period, despite the fact that McDowell only examined White on that date, did not have a treating relationship with White, and was not a specialist. [Dkt. 13-2 at 29 (R. at 28).] The ALJ also explained why he gave significant weight to the opinions of the State agency medical consultants, M. Brill, M.D. and J. Sands, M.D. (who both assessed White with a light residual functional capacity), noting that White's medical records demonstrated stable motor, sensory, and reflex responses and intact functioning in many regards. [Dkt. 13-2 at 29 (R. at 28).] Neither Dr. Brill nor Dr. Sands evaluated White or even met him, but rather reviewed only part of White's treatment records from 2012 and 2013. They did not have the benefit of reviewing Dr. LaRosa's treatment records – most of the records did not exist at the time and the ones that did were not reviewed by Dr. Sands. It would seem that treatment records spanning thirty months, from June 2013 to January 2016, that demonstrate a consistent level of pain, discomfort, and weakness would affect the state agency reviewers' assessment of White's functional capacity. Furthermore, both parties and all examining physicians agree that White's back disorder is degenerative, which, taking the word at its definition, indicates that White's condition will worsen over

14

time. Although an ALJ may give weight to consultative opinions such as those of Dr. Brill and Dr. Sands, the ALJ here did not adequately explain why the reviewers' opinions were entitled to greater weight than those of treating physician Dr. LaRosa.

When evaluating White's functional capacity, the ALJ found a light residual efficiency assessment appropriate and that a more restrictive residual capacity was not warranted, "as supported by the claimant's functional assessments, physical therapy records, prolonged work activity, and activities of daily living." [Dkt. 13-2 at 30 (R. at 29).] The ALJ noted that Dr. LaRosa's opinion that White "could perform no more than four hours total of sitting, standing, or walking throughout the day (with frequent absences) and lifting less than 10 pounds one to five percent of the day" was undermined by the fact that White was "able to perform 25-30 hours a week stocking 10-pound items through a given shift." [Dkt. 13-2 at 29 (R. at 28).] The ALJ concluded, therefore, that Dr. LaRosa's assessment directly conflicts with the claimant's testimony, as well as with the opinions from other sources in the record. [*Id.*] The ALJ appears to suggest that his conclusions are based on looking to the opinion evidence as a whole, but in the Seventh Circuit, this evaluation is not enough when the ALJ seeks to give less than controlling weight to a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).

Furthermore, when the ALJ discussed his reasoning for limiting the weight of Dr. LaRosa's opinion, the ALJ only gives one reason: the fact that White was able "to perform several months of warehouse work throughout 2015 and 2016." [*Id.*] The

15

Seventh Circuit cautions ALJs not to draw conclusions about a claimant's ability to work full-time based on part-time employment. *Lanigan v. Berryhill,* 865 F.3d 558, 564 (7th Cir. 2017); *Jelinek v. Astrue,* 662 F.3d 805, 812 (7th Cir. 2011); *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010). Moreover, the Seventh Circuit also cautions ALJs not to extrapolate a person performing household chores, such as caring for pets, going to church, or maintaining the house, with the responsibilities required with a full-time job. *Lanigan,* 865 F.3d at 864; *Hill v. Colvin,* 807 F.3d 862, 865, 869 (7th Cir. 2015); *Stark v. Colvin,* 813 F.3d 684, 688 (7th Cir. 2016).

Although an ALJ is not required "to address in writing every piece of evidence or testimony presented, he was required to provide 'an accurate and logical bridge' between the evidence and his conclusions." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). In this case, the ALJ did not explain why Dr. LaRosa was entitled to lesser weight than those of the consulting physicians using the factors found in §§ 404.1527 and 416.927, nor did the ALJ create a logical bridge between the evidence and his conclusions.

### E. Conclusion

For the reasons detailed herein, the Magistrate Judge recommends that the ALJ's decision be **REVERSED** and **REMANDED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. §636(b)(1). Failure to timely file objections within fourteen days after service shall constitute waiver of subsequent

review absent a showing of good cause for such failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

Date: 5/11/2018

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michael G. Myers
mgmyers10@sbcglobal.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov